*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA SWIDER and ERIC SWIDER,

Plaintiffs-Appellants,

UNPUBLISHED
March 2, 2023

v

DAVID MCHUGH TRUST and DAVID E.
MCHUGH,

Defendants-Appellees.

No. 358935
Oakland Circuit Court
LC No. 2020-181639-CH

Before: CAVANAGH, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Plaintiffs, Jessica Swider (Jessica) and Eric Swider (Eric), appeal as of right an order granting summary disposition in favor of defendants, David McHugh Trust (the Trust) and David E. McHugh (McHugh). Although the majority of plaintiffs' claims of error lack merit, we agree that the trial court erred by granting summary disposition of plaintiffs' harassment (civil stalking) claim. We therefore reverse the trial court's order with respect to that claim, but affirm in all other respects.

## I. BACKGROUND

This case concerns foreclosure of plaintiffs' residential real property. Plaintiffs executed a mortgage in favor of The State Bank (TSB) on March 18, 2015, and a second mortgage in favor of the Trust on August 27, 2015. Plaintiffs defaulted on both loans. The Trust foreclosed its mortgage first and was the high bidder at the sheriff's sale on December 10, 2019. The sheriff's sale for TSB's mortgage took place on January 14, 2020, and TSB was the high bidder at that sale. McHugh subsequently purchased TSB's interest while this action was pending.

-1-

Jessica initiated this action the day before the six-month redemption period for the Trust mortgage would have expired.[1]  The trial court entered orders extending the redemption periods for both mortgages while it considered whether to grant a preliminary injunction, but ultimately determined that an injunction was not called for.  Both redemption periods expired thereafter without plaintiffs exercising their redemption rights.

Plaintiffs' second amended complaint alleged six counts.  Count I sought declaratory relief rescinding or cancelling the Trust mortgage sheriff's sale on the basis that the underlying note was usurious and violated the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), 12 USC 5301 *et seq*.  Counts II and III involved similar allegations, again claiming that the note was usurious and violated the DFA, respectively.  Count IV sought declaratory or equitable relief concluding that defendants formally redeemed the first mortgage but purchasing TSB's interest during the redemption period.  Count V alleged a claim of civil conspiracy, and Count VI alleged a harassment claim.

Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), identifying several reasons for dismissal of plaintiffs' claims challenging the Trust foreclosure and the validity of the underlying debt.  Defendants also argued that summary disposition of plaintiffs' civil conspiracy claim was appropriate because plaintiffs failed to plead the necessary elements, while their harassment claim failed as a matter of law because it involved McHugh's contacts with plaintiffs for the purpose of collecting the debt owed the Trust, which constituted a legitimate purpose that did not qualify as harassment.  The trial court granted defendants' motion in its entirety without explanation.

## II.  STANDARDS OF REVIEW

We review de novo a trial court's grant of summary disposition.  *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), and the trial court did not specify which subrule it applied to each issue raised in defendants' motion.  But this Court will review a trial court's ruling under the correct subrule in any event.  *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005).

MCR 2.116(C)(7) governs summary disposition when a claim is barred by certain defenses, including the implications of a prior order or judgment, *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 517; 847 NW2d 657 (2014), or a statute of limitations, *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013).  "This Court reviews de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law."  *Wells Fargo Bank*, 304 Mich App at 518.  In doing so,

---

[1] Jessica was the only plaintiff in the initial complaint and sued only the Trust.  Eric and McHugh were added as parties by way of amended complaints.  The operative complaint is plaintiffs' second amended complaint.

this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *El-Khalil*, 504 Mich at 159. A court considering summary disposition under MCR 2.116(C)(8) must decide the motion on the pleadings alone, accepting all factual allegations as true. *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

"A motion under MCR 2.116(C)(10), on the other hand, tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160. The standard of review for dispositive motions brought under MCR 2.116(C)(10) is well settled:

In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Trueblood Estate v P&G Apartments, LLC*, 327 Mich App 275, 284; 933 NW2d 732 (2019) (quotation marks and citation omitted).]

"A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## III. REDEMPTION OF THE SENIOR MORTGAGE[2]

Defendants moved for summary disposition of plaintiffs' claims relating to the Trust foreclosure on the basis that the claims were rendered moot when the redemption period for TSB's senior mortgage expired, thereby extinguishing plaintiffs' and the Trust's interests in the property and vesting title in McHugh, as the purchaser of TSB's sheriff's deed. Plaintiffs argue on appeal that that their declaratory relief counts were not moot because the trial court could have determined that defendants redeemed the property. We disagree. We review this issue under MCR 2.116(C)(10). See *El-Khalil*, 504 Mich at 160.

The purchaser of a property at a properly conducted foreclosure sale "becomes the owner of an equitable interest in the mortgaged premises which ripens into a legal title if not defeated by redemption as provided by law." *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 138-139; 863 NW2d 344 (2014) (quotation marks and citation omitted). "If a mortgagor fails to avail him or herself of the right of redemption, all the mortgagor's rights in and to the property are extinguished." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014). Moreover, when a property is subject to multiple mortgages, failure to redeem following foreclosure of a senior mortgage also extinguishes the lien of a junior mortgagee. *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 125; 667 NW2d 880 (2003).

Count I of plaintiffs' second amended complaint sought declaratory relief rescinding or cancelling the Trust foreclosure on the basis that the underlying note was unlawful. But it is undisputed that TSB foreclosed on its mortgage in January 2020 and that plaintiffs did not redeem the senior mortgage, even after the trial court extended the redemption period. The lack of redemption extinguished plaintiffs' rights in the property, as well as the rights of the Trust as junior mortgagee. Thus, even if the trial court ultimately determined that the Trust foreclosure was improper, a judgment in plaintiffs' favor would not have any practical effect because plaintiffs would still be without any legal right to the property by operation of law for failure to redeem the senior mortgage. In other words, Count I was rendered moot by expiration of the TSB mortgage redemption period. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) (explaining that an issue is moot if it is impossible for a court to grant relief or entry of a judgment would not have a practical effect on an existing controversy).

---

[2] We reject defendants' contention that review of the Trust foreclosure is barred by the law-of-the-case doctrine, which applies "only to issues actually decided, either implicitly or explicitly, in [a] prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). Plaintiffs filed an application for leave to appeal the trial court's order denying their motions for preliminary injunctions, and this Court denied the application for failure to persuade the Court that immediate review was necessary. *Swider v David McHugh Trust*, unpublished order of the Court of Appeals, entered December 1, 2020 (Docket No. 354578). This Court did not express an opinion on the merits of plaintiffs' claims of error. As such, the law-of-the-case doctrine does not preclude review. See *Grievance Administrator*, 462 Mich at 260.

Plaintiffs maintain on appeal that the validity of the Trust foreclosure was not moot because the trial court could determine that McHugh's purchase of TSB's interest constituted a formal redemption by a junior lienholder, thereby preserving the parties' respective rights, and Count IV pleaded a valid claim for a declaratory judgment to that effect. We disagree.

Modern law generally treats trusts as legally distinct entities, "distinguishing between the trustee personally or as an individual and the trustee in a fiduciary or representative capacity." 1 Restatement Trusts, 3d, § 2, comment a, p 17.[3] Michigan has a long history of recognizing this distinction. See, e.g., *Bankers' Trust Co of Muskegon v Forsyth*, 266 Mich 517, 519-521; 254 NW 190 (1934) (holding that judgments entered against company as trustee could not be enforced against the company individually); *Hein v Hein*, 214 Mich App 356, 358; 543 NW2d 19 (1995) (observing that the respondent consented to termination of trust as beneficiary, while objecting in capacity as trustee). The only evidence before the trial court concerning this issue was the quitclaim deed executed by TSB in favor of McHugh. The deed does not specify whether the conveyance was made to McHugh individually or in his capacity as trustee.

Plaintiffs do not dispute that the Trust and McHugh are separate entities and, instead, argue that the trial court should have ignored the legal distinction under the same principles that allow courts to pierce the corporate veil protecting shareholders in order to avoid fraud or injustice. Assuming, without deciding, that these corporate principles apply in this context, plaintiffs' claim of error still lacks merit. The equitable title a sheriff's sale purchaser acquires is a property interest that can be sold or assigned, even during the redemption period. *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 592; 848 NW2d 425 (2014). Apart from their own opinions regarding McHugh's nefarious intentions, plaintiffs have not identified any reason that McHugh's purchase of TSB's deed was improper. Moreover, plaintiffs' opinion on this point is at odds with binding Michigan precedent.

In *Chauvin v American State Bank*, 242 Mich 269, 271; 218 NW 788 (1928), the plaintiffs granted a first mortgage to a bank and a second mortgage to two privates lenders. The bank foreclosed the first mortgage and purchased the property at the sheriff's sale. *Id*. Two days before the redemption period expired, the private lenders purchased the property from the bank and received a quitclaim deed reflecting the conveyance. *Id*. The plaintiffs argued on appeal that "the deed from the bank to the second mortgagees, while right to redeem was open, operated in fact as a redemption and not a transfer of inchoate title." *Id*. at 272. The Supreme Court disagreed, explaining that the second mortgagees had two options: they could redeem the first mortgage, thereby increasing their mortgage interest, or they could purchase the bank's title and have their previous interest as second mortgagees merge with their title acquired by virtue of the purchase. *Id*. at 272-273. The Court concluded that the second mortgagees understood the advantages of a purchase in lieu of redemption, "and the quitclaim deed was intended to consummate a purchase, just as it purports, and not a mere redemption." *Id*. at 273. Thus, upon expiration of the redemption

---

[3] Restatements of the law are not binding authority, but may be consulted for their persuasive value. *Livings Estate v Sage's Investment Group, LLC*, 507 Mich 328, 345 n 12; 968 NW2d 397 (2021).

period, the second mortgagees acquired legal title as specified by the foreclosure statute then in effect. *Id*. at 272-273.

Consistent with *Chauvin*, even if McHugh was acting on behalf of the Trust when he purchased TSB's interest, the Trust's status as the junior mortgagee would not convert the transaction from a purchase to a redemption. The quitclaim deed unequivocally conveyed TSB's "right, title, and interest as Grantee of a Sheriff's Deed" to McHugh without any language suggesting an intent to redeem. Plaintiffs did not present any evidence to establish a material factual dispute concerning the nature of the transaction between McHugh and TSB. Defendants were entitled to judgment concerning Count IV as a matter of law. The trial court did not err by granting summary disposition.

## IV. JUDICIAL ESTOPPEL

Defendants also moved for summary disposition of plaintiffs' claims challenging the validity of the note that was secured by the Trust mortgage on the basis of judicial estoppel, reasoning that plaintiffs' failure to challenge the debt in Eric's bankruptcy proceedings precluded their claims in this action. Plaintiffs argue on appeal that judicial estoppel was inapplicable. We disagree. We review this issue under MCR 2.116(C)(7). See *Wells Fargo Bank*, 304 Mich App at 517.

The record concerning the bankruptcy proceedings is limited. Eric's first bankruptcy case was filed in 2018, and the Trust filed a proof of claim for $112,696.42 for "money loaned," indicating that the debt was secured by plaintiffs' residence. Eric likewise identified the Trust on his schedule of creditors with claims secured by property and indicated that Jessica was a codebtor with respect to the Trust. He further disclosed that he had no claims against third parties. During that case, the bankruptcy court entered an order for adequate protection payments authorizing preconfirmation monthly disbursements of $400 to the Trust. The 2018 case was dismissed in July 2019 because of Eric's failure to fully comply with the requirements of the Chapter 13 case.

Shortly thereafter, Eric filed a second bankruptcy petition, again identifying the Trust as a secured creditor and reporting that he had no claims against third parties. A proposed Chapter 13 plan indicated that the Trust would receive monthly payments from the bankruptcy trustee. Moreover, the Trust (through its counsel), Eric (through his bankruptcy counsel), and Jessica (as codebtor) executed a stipulation requiring adequate protection payments and dictating that the Trust could obtain an order granting in rem relief from the automatic stay as to both Eric and Jessica if Eric defaulted on the adequate protection payments. The proposed plan was denied, and the case was dismissed in October 2019.

In order to protect the integrity of the judicial and administrative processes, "[j]udicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation." *Id*. at 537 (quotation marks and citation omitted). When a litigant has unequivocally and successfully asserted a position in a prior proceeding, the litigant will be estopped from asserting a "wholly inconsistent" position later. *Id*. (quotation marks and citation omitted). In *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 480-481; 822 NW2d 239 (2012), this Court explained that judicial estoppel arising from bankruptcy proceedings requires the reviewing court to find:

(1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. [Quotation marks and citation omitted; alterations in original.]

Plaintiffs dispute the applicability of judicial estoppel because Jessica was the only debtor to sign the note in favor of the Trust and could not have pursued her claims in Eric's bankruptcy cases. We disagree.

When a creditor files a proof of claim in a bankruptcy proceeding, the claim is deemed allowed unless "a party in interest" objects. 11 USC 502(a). In *In re Morton*, 298 BR 301 (Bankr CA 6, 2003),[4] the debtor objected to several proofs of claim filed by creditors on the basis that her estranged husband was the only party contractually obligated to pay the debts, and the court considered whether the spouse was a party in interest with standing to respond to the debtor's objections. *Id*. at 304-307. The court observed that Fed R Bankr P 3005(a) permitted "an entity that *is or may be* liable" to a creditor along with the debtor to file a proof of claim in the name of the creditor. *Id*. at 306. The court reasoned that the debtor's spouse might be liable for the challenged claims, so the procedural rule afforded him the right to file a proof of claim on behalf of the creditors. *Id*. By the same token, he was undoubtedly a party in interest with standing to respond to the debtor's objections. *Id*. The *Morton* court also looked to other courts' treatment of who constituted a party in interest, favorably citing the following:

[Party in interest] has been described as "an expandable concept depending on the particular factual context in which it is applied." In various contexts, a "party in interest" has been held to be one who has an actual pecuniary interest in the case; anyone who has a practical stake in the outcome of a case; and those who will be impacted in any significant way in the case. [*Id*. at 307, quoting *In re Cowan*, 235 BR 912, 915 (Bankr WD Mo, 1999) (citations omitted).]

Applying this reasoning, the court opined that the debtor's spouse was a party in interest because he had a pecuniary interest in any decision relieving the debtor from the claimed debts, and permitting him to participate advanced the goals of the Bankruptcy Code, 11 USC 101 *et seq*. *In re Morton*, 298 BR at 307.

Although *Morton* addressed a nondebtor's right to respond to the debtor's objections, it can be applied here by analogy. As noted earlier, a creditor's claim is generally deemed allowed absent an objection by a party in interest. 11 USC 502(a). The Trust asserted claims in both bankruptcy cases. Jessica, as the sole debtor in the note and an owner of the property serving as collateral, clearly had an actual pecuniary interest in the handling of that debt and a practical stake in the outcome. Thus, Jessica was a party in interest and could have objected to the Trust's claim under 11 USC 502(a). There is no evidence that she objected to the validity of the debt. To the

---

[4] This Court is not bound by decisions of federal courts, but may rely on federal decisions as persuasive authority. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

contrary, she stipulated to adequate protection payments in the second case and relief from the automatic stay in the event of a default in those payments. Consequently, we reject plaintiffs' contention that Jessica's limited role in the bankruptcy proceedings precludes application of judicial estoppel.

Plaintiffs also argue that judicial estoppel was inapplicable because their claims in this case are not wholly inconsistent with their position in the bankruptcy proceedings. We disagree. A bankruptcy debtor must "file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." *Spohn*, 296 Mich App at 481. A potential cause of action is an asset that must be disclosed. *Id*. Moreover, "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed." *Id*. at 482 (quotation marks and citation omitted). When a litigant pursues a cause of action that was not previously disclosed in a bankruptcy case, the first requirement for judicial estoppel is established. *Id*. It is undisputed that Eric did not disclose any potential claims concerning the validity of the Trust mortgage, nor did Jessica object to the Trust's proofs of claim in either bankruptcy proceeding. Yet in this case, Counts II and III of plaintiffs' second amended complaint allege that the debt secured by the Trust mortgage was unlawful because it was usurious and violated DFA requirements. By asserting claims challenging the validity of a debt that was acknowledged and unchallenged in the bankruptcy cases, plaintiffs are attempting to advance a position contrary to the position they assumed in the bankruptcy proceedings.

Finally, plaintiffs contend that as lay individuals they were unaware the note was unlawful, so there was no basis for the trial court to conclude that they acted in bad faith. We disagree. Plaintiffs' position implicates the third requirement of judicial estoppel, i.e., that the omission "did not result from mistake or inadvertence." *Id*. at 481 (quotation marks and citation omitted). Plaintiffs' argument is unpersuasive because ignorance of the law will not relieve a litigant from application of judicial estoppel on the basis of failure to disclose a claim in bankruptcy proceedings, especially when the debtor was represented by counsel. *Stanley v FCA US, LLC*, 51 F4th 215, 221 (CA 6, 2022).

## V. USURY

Concerning plaintiffs' usury count, defendants sought summary disposition because the note had a lawful interest rate on its face and the usury statute plaintiffs relied upon did not apply to the note. Plaintiffs maintain that summary disposition was inappropriate because the note referred to 11% interest without accounting for the "consulting fee" Jessica paid to McHugh, which resulted in an actual interest rate that exceeded the statutory cap. The trial court did not err by granting summary disposition of Count III because MCL 438.31c(7) did not apply to the underlying note. We review this issue under MCR 2.116(C)(10). See *El-Khalil*, 504 Mich at 160.

Pursuant to MCL 438.31c(7), "[t]he parties to a purchase money mortgage or a second mortgage may agree in writing for the payment of a rate of interest not to exceed 11% per annum." By its plain language, MCL 438.31c(7) limits the interest rate for a "purchase money mortgage" or a "second mortgage." For purposes of this provision, the Legislature defined those terms as follows:

(a) "Purchase money mortgage" means a mortgage secured by a first lien or junior lien taken or retained by the seller of real property to secure all or part of the purchase price of the property.

(b) "Second mortgage" means a mortgage from which the proceeds of a loan or other extension of credit made by a third person are secured by a mortgage on the real property for which the mortgagor has used the proceeds of the loan or other extension of credit to pay all or part of the purchase price of the property. [MCL 438.31c(7)(a) and (b).]

Both definitions unambiguously require that the mortgage be given as security for funds used to pay "all or part of the purchase price of the property."

Here, Jessica executed the note in August 2015, approximately five months after plaintiffs purchased the property. Given this time lapse, we can infer that the note was not used to pay all or part of the purchase price of the property. MCL 438.31c(7), therefore, did not apply, and the trial court did not err by granting summary disposition of Count II.

## VI. DFA CLAIM

Defendants argued below that they were entitled to summary disposition of Count IV because the DFA did not afford plaintiffs a private cause of action and, if it did, plaintiffs' claims were time-barred. Plaintiffs dispute both positions on appeal. Although we agree that the DFA created a private cause of action for the types of violations alleged by plaintiffs, the trial court did not err by granting summary disposition of this count because plaintiffs' claim was either untimely or moot following the nonredemption of the senior mortgage. We review this issue under MCR 2.116(C)(7), *Kincaid*, 300 Mich App at 522 (regarding statute of limitations), and (C)(8), *El-Khalil*, 504 Mich at 159 (regarding legal sufficiency of complaint).

The mere fact that a person has been harmed by a violation of a federal statute does not automatically create a private cause of action. *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 496; 697 NW2d 871 (2005). Instead, a private cause of action must be created by Congress, either expressly or by implication. *Id*. at 496-500. A cursory analysis of the relevant statutory language suggests that a private cause of action does exist.

Plaintiffs' DFA claim is premised on violations of the following statutory provisions:

In accordance with regulations prescribed by the Bureau, no creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms, and all applicable taxes, insurance (including mortgage guarantee insurance), and assessments. [15 USC 1639c(a)(1).]

and

No creditor may extend credit to a borrower in connection with a consumer credit transaction under an open or closed end consumer credit plan secured by a

dwelling or residential real property that includes a dwelling, other than a reverse mortgage, that provides or permits a payment plan that may, at any time over the term of the extension of credit, result in negative amortization . . . . [15 USC 1639c(f)[5].]

Although the foregoing statutory language does not signal an intent to create a private cause of action, § 1640(a) details the extent of monetary liability that may be imposed on "any creditor who fails to comply with any requirement imposed under this part," i.e., 15 USC 1631 through 15 USC 1651. The creditor's liability includes "actual damage sustained by such person as a result of the failure." 15 USC 1640(a)(1). And with respect to violations of 15 USC 1639c(a), in particular, the creditor is liable for "an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material." 15 USC 1640(a)(4). By identifying the amounts a person or class of people harmed by violations of 15 USC 1639c can recover, it would seem that Congress intended to create a private cause of action.

This conclusion is further bolstered by the following language from § 1640(e):

Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . . Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 1639, 1639b, 1639c, 1639d, 1639e, 1639f, 1639g, or 1639h of this title may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs.

The foregoing provision regarding the time for bringing an action for DFA violations clearly contemplates that 15 USC 1639c can be judicially enforced. And by stating in the last sentence that an enforcement action may "also" be brought by a state attorney general, Congress implied that such an action could likewise be brought by an individual as a private action. See also 15 USC 1640(k) (referring to the time limit for "a private action" for damages under 15 USC 1640(e)).

Nonetheless, the trial court did not err by granting summary disposition of plaintiffs' DFA claim because defendants were entitled to judgment as a matter of law for a different reason. Defendants also moved for summary disposition of plaintiffs' DFA claim on the basis that it was

---

[5] 15 USC 1639c(f) identifies exceptions to its prohibition of negative amortization, but the details of those exceptions are not pertinent to this appeal.

untimely under 15 USC 1640(e). Plaintiffs argue that the their DFA claim was not time-barred because 15 USC 1640(k) dictates that when a creditor initiates foreclosure of a residential mortgage loan, the consumer "may assert a violation by a creditor of . . . section 1639c(a) of this title, as a matter of defense by recoupment or set off without regard for the time limit on a private action for damages under subsection (e)." Plaintiffs' position is unpersuasive. To the extent the DFA claim was asserted as a defense to the Trust mortgage foreclosure, the defense was rendered moot when the Trust mortgage was extinguished by the nonredemption of the senior mortgage foreclosure. See *Advanta Nat'l Bank*, 257 Mich App at 125 (noting that foreclosure of a senior mortgage extinguishes a junior mortgage in the absence of redemption). To the extent plaintiffs sought damages for the DFA violations, the violations occurred at the time of the loan origination in 2015, making their June 2020 lawsuit untimely under 15 USC 1640(e).

## VII. CIVIL CONSPIRACY

Plaintiffs next argue that they presented a valid claim for civil conspiracy by alleging that defendants engaged in a concerted action to claim ownership of plaintiffs' property by unlawful means. We disagree. We review this issue under MCR 2.116(C)(8). See *El-Khalil*, 504 Mich at 159.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Swain v Morse*, 332 Mich App 510, 530; 957 NW2d 396 (2020) (quotation marks and citation omitted). The existence of underlying tortious conduct is an essential element of civil conspiracy. *Urbain v Beierling*, 301 Mich App 114, 132; 835 NW2d 455 (2013). Count V alleged that defendants conspired to claim ownership of the property by unlawful means. Plaintiffs argue on appeal that "[t]he underlying tort committed by [defendants] was the usurious contract in order to obtain their ownership interest in the Property." But it is clear from the pleadings that the interest limit set forth on MCL 438.31c(7) did not apply to the note because the proceeds were not used to pay all or part of the purchase price of the property.[6] Because the note was not usurious, it could not serve as the underlying tort to support plaintiffs' civil conspiracy claim. The trial court did not err by granting summary disposition of plaintiffs' civil conspiracy claim.

## VIII. HARASSMENT (CIVIL STALKING CLAIM)

Lastly, plaintiffs argue that the trial court erred by granting summary disposition of their harassment claim because defendants made numerous unconsented contacts with plaintiffs and their friends and family, which caused Eric to suffer physical and emotional ailments. We agree that summary disposition was improper, as there was a question of fact regarding whether

---

[6] Plaintiffs' civil conspiracy count, as pleaded, also alleged that defendants pursued their unlawful intent by having McHugh purchase TSB's interest in the property in lieu of the Trust exercising its redemption rights. Plaintiffs did not address this aspect of their civil conspiracy claim in their appellate brief, thereby abandoning review of that theory. See *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009) (declining to decide an insufficiently briefed issue).

McHugh's contacts served a legitimate purpose. We review this issue under MCR 2.116(C)(10). See *El-Khalil*, 504 Mich at 160.

MCL 600.2954 provides a stalking victim a civil cause of action, "with the elements of civil stalking being the same as those in the criminal statutes." *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721; 691 NW2d 1 (2005). Consistent with the definition of stalking outlined in the Michigan Penal Code, MCL 750.1 *et seq.*, "stalking constitutes a willful course of conduct whereby the victim of repeated or continuous harassment actually is, and a reasonable person would be, caused to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Id*. at 722, citing MCL 750.411h(1)(d). " 'Harassment' means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." *Nastal*, 471 Mich at 722, quoting MCL 750.411h(1)(c). Conduct that serves a legitimate purpose, however, is excluded from the definition of harassment. *Nastal*, 471 Mich at 722 citing MCL 750.411h(1)(c). Thus, such conduct "cannot constitute harassment or, derivatively, stalking." *Nastal*, 471 Mich at 723. Conduct "serves a legitimate purpose" when it "contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute." *Id*.

In *Nastal*, the Supreme Court considered the extent to which surveillance by private investigators constituted conduct that serves a legitimate purpose for purposes of a civil stalking claim. *Id*. at 714. The plaintiff was involved in an automobile accident and subsequently sued the operator and owner of the tractor-trailer that collided with his vehicle, seeking damages for a closed head injury. *Id*. at 715. The defense retained a licensed private investigation firm to surveil the plaintiff. *Id*. at 715-716. But each time the firm's investigators undertook surveillance efforts, the plaintiff eventually noticed their presence and either confronted the investigators, called the police, or employed unusual driving techniques in an attempt to get behind their vehicles or otherwise evade them. *Id*. at 716-718. After several unsuccessful surveillance attempts, the defense directed the firm to cease their efforts. *Id*. at 718-719. The plaintiff later sued the investigators and their supervisor for civil stalking. *Id*. at 719. The trial court denied the defendants' motion for summary disposition, reasoning that their surveillance initially served a legitimate purpose, but whether it continued to serve that purpose after the investigators were discovered presented a question of fact. *Id*.

The Supreme Court disagreed and remanded for entry of summary disposition in the defendants' favor. *Id*. at 714-715. As noted above, the Court determined that conduct serves a legitimate purpose, and is therefore exempt from the definition of "harassment, or derivatively, stalking," when it "contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute." *Id*. at 723. Citing the Professional Investigator Licensure Act, MCL 338.821 *et seq.*, the Court reasoned that surveillance conducted to obtain evidence in a lawsuit "is valid and well within the law." *Id*. at 724. "It is only when the surveillance ceases to serve or contribute to the purpose of securing the information permitted by MCL 338.822(b) that conduct would be outside the statutory safe harbor of MCL 750.411h(1)(c) and a civil action for stalking could be maintained." *Id*. at 725. The Court opined that the trial court erred when it found a genuine issue of fact concerning the legitimacy of the surveillance after the plaintiff discovered it because undisputed testimony indicated that only continued surveillance

at the time of discovery would be ineffective. *Id*. Later surveillance, "especially after a cooling off period, could produce information useful to the case." *Id*.

Here, the evidence before the trial court concerning this claim was extremely limited. Plaintiffs' second amended complaint alleged that defendant "sent numerous unsolicited messages by way of telephone and/or computer, to Plaintiff(s) and/or their relatives making various threats and improper comments," and that these actions caused plaintiffs emotional distress, damages, or both. Plaintiffs also proffered Eric's response to a discovery request, wherein he explained:

> David McHugh has caused significant emotional distress dating back to when the initial loan was made in August of 2015. My wife and I both received, on a monthly basis, multiple text messages, phone calls, emails and in person visits where he would inquire about the current months payment and then threaten that he could foreclose on our home and leave us homeless and penniless. He also threatened to, and ultimately did, contact our friends and families in [an] effort to cause embarrassment, hurt our reputation and attempt to extract a future inheritance from my 88 year old terminally ill mother.

Defendants provided no evidence to dispute the foregoing, instead relying solely on their bare assertion, unsupported by any authority, that "a lender attempting to collect upon its debt would certainly be within its rights to contact the borrowers due to their contractual relationship and see why they are no longer paying."

The circumstances at hand are a far cry from the situation addressed by the Supreme Court in *Nastal*. Defendants rely on a contractual right to collect a debt, but failed to identify any provision in the agreements with plaintiffs that would allow McHugh to repeatedly contact plaintiffs by every available method. To the contrary, the notice provisions in both the mortgage and promissory note call for written notice delivered in person or by mail. Neither document purports to allow ceaseless communications by additional methods like text-messages, e-mails, or by way of third parties. Moreover, while the defendants in *Nastal* presented unrebutted evidence that their continued surveillance efforts may have produced useful information as authorized by statute even though their earlier efforts were known to the plaintiff, there is no evidence from which a fact-finder could determine that McHugh's communications with plaintiffs' family and friends could actually serve defendants' debt collection purpose. Rather, as plaintiffs suggest, a fact-finder could view these acts as evidence that McHugh's intent was to cause plaintiffs embarrassment. See, e.g., *Hayford v Hayford*, 279 Mich App 324, 333; 760 NW2d 503 (2008) (reasoning that even if the respondent had "a partially legitimate motive for the contact," evidence of the respondent's unusual and extraordinary methods of obtaining information supported finding that the respondent was not acting for a legitimate purpose). Because there was a question of fact regarding whether McHugh's contacts served a legitimate purpose, the trial court should not have granted summary disposition of plaintiffs' harassment claim.

## IX. CONCLUSION

For the reasons outlined in this opinion, we reverse the trial court's order granting summary disposition as it relates to plaintiffs' harassment claim. In all other respects, we affirm. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett